UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LARRY J. ADAMS,

    Plaintiff,

v.                                                        Case No. 2:08-cv-156
                                                       HON. R. ALLAN EDGAR
KAREN PRUNICK, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Larry Jovan Adams filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against defendants Karen Prunick, Kenneth Clapp, Glen Hart, Robert Tenuta, Timothy Lee, Denver McBurney, Lyle Rutter, Jeffrey Contreras, David Bergh and Ronald Harris. Plaintiff asserts Eighth Amendment and First Amendment retaliation claims for denying him food while confined at the Alger Maximum Correctional Facility.

Plaintiff alleges that on March 27, 2008, defendant Prunick stated during her rounds that if she saw plaintiff at his cell door one more time she was going to issue plaintiff a misconduct ticket. Plaintiff told her that he was at his door for a shake down and that he would be writing a grievance on defendant Prunick for her threat. Plaintiff states that defendant Prunick warned him that if he wrote a grievance on her, plaintiff would be getting some misconduct tickets and that all the other officers would support defendant.

On March 29, 2008, defendant Prunick was picking up food trays. She stopped at plaintiff's cell and told plaintiff that since he liked to write grievances she would not pick up his food

tray and plaintiff would not receive a meal the next day. Defendant Prunick placed a no services restriction on plaintiff. Plaintiff received two misconduct tickets from defendant Prunick. Defendant Clapp came to plaintiff's cell that evening to retrieve law books. Plaintiff placed his tray and law books on the food slot. Defendant Clapp told plaintiff that he was on a no services restriction and food loaf because he had filed grievances against defendant Prunick. Defendant Clapp refused to take the food tray and law books. Plaintiff alleges that he was told that no services meant that he would not "eat or shower or anything." Defendant Clapp placed a computer generated sign on plaintiff's cell door that stated: "no services until tray and law books returned."

Plaintiff claims that defendants Prunick, Clapp and Hart refused to turn on his water and feed him breakfast, lunch and dinner on March 30, 2008. Plaintiff claims that he became dizzy, faint, weak and suffered with headaches. Plaintiff asserts that his kidneys began to ache. Plaintiff claims that defendants caused him to go 38 hours without food or drink.

Plaintiff claims that the misconduct ticket written by defendant Prunick was dismissed, because the video tape evidence showed that she had lied and fabricated the misconduct tickets. Plaintiff sent kites to Warden Bergh, ADW Rutter, Inspector Contreas and RUM McBurney. Captain Immel came to investigate but no relief was given. Hearing Investigator Bonevelle allegedly told plaintiff that he received the misconduct tickets because he filed grievances on her friend Prunick. Defendants move for summary judgment.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and

admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Prunick states that she wrote plaintiff a sexual misconduct ticket because plaintiff exposed himself to her. Defendant Prunick then refused to pick up plaintiff's tray because plaintiff would not cover himself. Plaintiff was found guilty of that charge. Defendant Prunick also wrote plaintiff a misconduct ticket for threatening behavior which was dismissed. Defendant Clapp indicates that she declined to pick up plaintiff's tray and law books because of plaintiff's actions with defendant Prunick. Defendant Hart asserts that he did not provide plaintiff breakfast or lunch on March 30, 2008, because plaintiff refused to return the tray from his March 29, 2008 dinner. Defendant Tenuta states that plaintiff refused to return his tray when he attempted to retrieve it. Defendant Lee instructed another staff member to obtain plaintiff's tray.

Defendant Harris states that he does not recall plaintiff ever offering to return his tray. Defendant McBurney states that plaintiff's water was never shut off and that plaintiff received breakfast on March 31, 2008, after he finally returned his food tray. According to defendants Contreras, Immel and Rutter, an investigation revealed that plaintiff's water was not turned off and plaintiff was refused food trays only after he threatened and exposed himself to defendant Prunick.

Defendants argue that the limited denial of food for one day could not have violated plaintiff's Eighth Amendment rights. Defendants assert that the denial of food was done for security and safety reasons and not to punish the plaintiff. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In the opinion of the undersigned, plaintiff has presented contradictory facts that, if true, could establish that his Eighth Amendment rights were denied. Plaintiff has presented some evidence that indicates that defendants purposefully punished him by refusing to provide meals and by refusing to pick up his food tray. There are also inconsistencies regarding whether plaintiff's

water was shut off and factual inconsistencies among some of the defendants as to what occurred. Moreover, evidence was presented in one misconduct hearing involving the threatening behavior ticket that, at the very least, implies that defendant Prunick was not telling the truth. Accordingly, in the opinion of the undersigned, a genuine issue of material fact exists as to what occurred because there are factual inconsistencies in the record as to whether plaintiff was denied meals for security reasons or merely for punishment. In the opinion of the undersigned, the record could support a finding of deliberate indifference to plaintiff's Eighth Amendment rights. Defendants have failed in their burden of persuasion in establishing that no genuine issue of material fact exists.

Similarly, a genuine issue of fact exists regarding whether plaintiff was retaliated against for filing grievances. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants argue that plaintiff was denied meals because of his threatening behavior and not because he engaged in protected conduct. Plaintiff has attached affidavits from other prisoners who state that they overheard defendants tell plaintiff that he was being denied meals because he filed grievances. Defendants deny making such statements. There are statements in the

record that plaintiff was denied meals due to his threatening behavior. However, plaintiff was found not guilty of his misconduct ticket for threatening behavior for multiple reasons. The hearings officer explained:

> Threat: On 3/29/08 the officer claims that the prisoner threatened the officer at 1638 when she approached his cell and told him that "I was there to get his law books." The officer then wrote the misconduct report at 1855. Later, after the 1638 video was obtained, the misconduct report was corrected to a time of 1810. The video did show the officer at the prisoner's cell at 1810 and it appeared that she was upset with the prisoner because of her posture while in front of the cell, but there have been too many questions raised to make a finding that the institution established that the prisoner made a threat to the officer. First, there was a problem with the time. It would be easy to understand why the officer would make an error between 1600 and 1800 because of the conversion of regular time to military time, but it would be harder to understand why the officer would also be off by 28 minutes as the time initially given was 1638 when the correct time was 1810. Second, there [sic] even a bigger problem with the context of the threat. The officer claims that she was "picking up law library books" on the wing and went to the prisoner's cell to tell him that "I was there to get his law books." The video did not show that. The video showed the officer going on the wing with two snack bags, delivering those bags and then immediately walking over to the area of the prisoner's cell. Her actions would be consistent with the prisoner threatening her because of the way she went directly to his door, spoke with him and then put her hands on her hips, but she was not picking up law library books and it does not appear she started to pick up books as she immediately left the wing after she walked away from the prisoner's cell front. It is possible that she then went and got the law library cart and started picking up books. It is also possible that there was a lot of [sic] her mind and she confused the times, but, with this record, it is also possible that she identified the wrong poisoner or she did not accurately recount what exactly was said by the prisoner. There are too many questions unanswered by this record, to find that her account was reliable or that the institution met its burden of proof. Even thought the Hearing Officer suspects that something did happen because of the officer's reaction on the video, it is not enough. Charge not upheld.

Similarly, in the opinion of the undersigned, questions still exist on this record as to why plaintiff was denied meals for one day. Defendants have moved for qualified immunity. However, qualified

immunity is unavailable where there exist disputed questions of fact. When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

In summary, the undersigned recommends that defendants' motion for summary judgment (Docket #43) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 25, 2009